IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| KAREEM SMITH, | No. 4:18-CV-02009 |
|---|---|
| Plaintiff. | (Judge Brann) |
| v. | |
| NURSE NANCY, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### SEPTEMBER 4, 2019

**I. BACKGROUND**

In October 2018, Kareem Smith—a Pennsylvania state prisoner—filed this civil rights action alleging that Defendants violated his Eighth Amendment rights by failing to adequately treat his medical conditions.[1] Smith asserts that, in May 2017, he began to develop itchy and painful bumps on his body, for which he was prescribed ineffective treatments.[2] In March 2018, a biopsy was conducted and Smith was diagnosed with scabies.[3] Despite this diagnosis, Defendants allegedly asserted that Smith suffered from eczema and continued to improperly treat his

---

[1] Doc. 1.
[2] *Id.* at 8-12.
[3] *Id.* at 12.

condition.⁴ Defendants also threatened to send Smith to "the hole" if he continued to complain about his medical condition.⁵

In November 2018, a summons was issued in this matter.⁶ Although Medical Supervisor Martin filed a waiver of service form,⁷ to date no waiver of service form has been returned by Defendants Nurse Nancy, Dr. Prince, or Dr. Stephen Schleicher (collectively "Unserved Defendants").⁸ Consequently, on August 2, 2019, this Court directed Smith to show cause as to why the action against Unserved Defendants should not be dismissed pursuant to Fed. R. Civ. P. 4(m) for failure to serve them with the summons and complaint within 90 days.⁹ Smith has not timely responded to that Order.

Prior thereto, Martin filed a motion to dismiss asserting, *inter alia*, that claims against her were barred because Smith failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act¹⁰ ("PLRA").¹¹ Specifically, Martin contends that, although Smith fully exhausted two administrative grievances, neither

---

⁴ *Id.* at 12-16.

⁵ *Id.* at 14-15.

⁶ Doc. 6, 8.

⁷ Doc. 10.

⁸ Because these individuals were never served with the complaint, Smith's requests to enter default judgment against them will be denied. (Docs. 17, 19).

⁹ Doc. 23

¹⁰ 42 U.S.C. § 1997e.

¹¹ Docs. 11, 12.

grievance identified Martin as a subject of the grievance—as required by Pennsylvania Department of Corrections regulations.[12] Smith in turn concedes that he did not exhaust his administrative remedies as to Martin, but argues that such failure should be excused because prison officials threatened to lock Smith in solitary confinement if he continued to complain about his medical issues, thereby rendering administrative remedies unavailable.[13]

Because Martin's motion relied in part on the contention that Smith failed to exhaust his administrative remedies, this Court issued an order—pursuant to *Paladino v. Newsome*, 885 F.3d 203, 211 (3rd Cir. 2018)—that converted that motion to a motion for summary judgment and permitted the parties to supplement the record with any pertinent documents or arguments related to the exhaustion of Smith's administrative remedies.[14] (Doc. 42). Neither party has submitted timely supplemental materials, and these matters are now ripe for consideration.

## II. DISCUSSION

"Summary judgment is appropriate when, drawing all reasonable inferences in favor of the nonmoving party, the movant shows that there is no genuine dispute as to any material fact, and thus the movant is entitled to judgment as a matter of

---

[12] Doc. 12 at 5-6.
[13] Doc. 20 at 7-8.
[14] Doc. 24.

law."[15] "A dispute is genuine if a reasonable trier-of-fact could find in favor of the non-movant, and material if it could affect the outcome of the case."[16]

### A. Failure to Exhaust Administrative Remedies

The PLRA requires that prisoners exhaust all available administrative remedies prior to filing suit in federal court.[17] "Exhaustion is thus a non-jurisdictional prerequisite to an inmate bringing suit and, for that reason, . . . it constitutes a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time."[18] "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."[19]

To exhaust administrative remedies in Pennsylvania state prisons, prisoners are required to file a grievance with the Facility Grievance Coordinator within fifteen working days of the incident of which the prisoner complains.[20] That grievance must

---

[15] *Minarsky v. Susquehanna Cty.*, 895 F.3d 303, 309 (3d Cir. 2018) (internal quotation marks omitted).

[16] *Bradley v. W. Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 650 (3d Cir.) (internal quotation marks omitted), *cert. denied*, 139 S. Ct. 167 (2018))."

[17] *Rinaldi v. United States*, 904 F.3d 257, 264-65 (3d Cir. 2018).

[18] *Id.* at 265 (emphasis and internal quotation marks omitted).

[19] *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

[20] Doc. 12 at 6; DC-ADM 804 § 1(A)(8).

4

"identify individuals directly involved in the event(s)" and contain other pertinent information relating to the event.[21]

Despite containing a strict exhaustion requirement, "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available.'"[22] Thus,

> the Supreme Court [has] identified "three kinds of circumstances in which an administrative remedy, although officially on the books," is not "available" because it is "not capable of use to obtain relief": (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."[23]

Under the third category, administrative remedies are rendered unavailable "where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm."[24] Those threats of retaliation must actually deter the prisoner from filing a grievance, and be sufficient to "deter a reasonable

---

[21] Doc. 12 at 6; DC-ADM 804 § 1(A)(11)(b).

[22] *Rinaldi*, 904 F.3d at 266 (quoting *Woodford*, 548 U.S. at 93).

[23] *Id.* at 266-67 (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016)).

[24] *Id.* at 267.

inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust."[25]

"The burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant."[26] "But once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him."[27] When considering exhaustion in the context of a motion for summary judgment, "a district court may not make credibility determinations or engage in any weighing of the evidence."[28] "Rather, the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor."[29]

It is undisputed that Smith failed to identify Martin in any of the grievances that he exhausted regarding his current claims and therefore failed to exhaust his administrative remedies as to Martin.[30] The burden thus shifts to Smith to demonstrate that administrative remedies were unavailable. The Court concludes that Smith cannot meet his burden.

---

[25] *Id.* at 268 (internal quotation marks omitted).

[26] *Id.* at 268.

[27] *Id.*

[28] *Paladino*, 885 F.3d at 209-10 (internal quotation marks omitted).

[29] *Id.* at 210 (internal quotation marks omitted).

[30] *See* Doc. 1 at 38-42; Doc. 20 at 7-8.

Smith asserts that prison officials threatened to send him to "the hole" if he either "trie[d] to put in a request slip for sick-call for his serious medical needs"[31] or if he "continue[d] to complain about his serious medical needs."[32] These threats gained legitimacy, according to Smith, because Martin's husband is a guard at the prison in which Smith is confined.[33]

These allegations, even accepted as true, are insufficient to demonstrate that Smith was actually deterred from filing grievances. Importantly, the undisputed evidence demonstrates that Smith filed grievances related to his medical needs and the allegedly deficient medical care that he received at the prison; these grievances simply did not reference Martin.[34] Smith makes no allegation that the threats from prison officials were aimed at deterring him from complaining against Martin specifically or that he interpreted them as such, nor—given the generalized nature of the threats—may such an inference reasonably be drawn. Rather, the threats applied to *any* complaint that Smith may lodge regarding his medical treatment. Thus, it is apparent that the threats to send Smith to solitary confinement "if he continue[d] to complain about his serious medical needs"[35] did nothing to deter

---

[31] Doc. 20 at 7.

[32] *Id.* at 8.

[33] *Id.*

[34] Doc. 1 at 38-42.

[35] Doc. 20 at 7-8.

7

Smith "from lodging a grievance or pursuing a particular part of the process."[36] Smith therefore cannot sustain his burden of demonstrating that administrative remedies were unavailable to him, and his claims against Martin must be dismissed.

### B. Dismissal for Failure to Serve

Finally, with respect to Smith's failure to serve Unserved Defendants, Fed. R. Civ. P. 4(m) requires that a plaintiff serve the defendants "within 90 days after the complaint is filed." If the plaintiff fails to timely serve a defendant, courts may "dismiss the action without prejudice against that defendant" or grant an extension of time, unless the plaintiff shows good cause for the failure to timely serve a defendant, in which case an extension of time must be granted.[37]

The United States Court of Appeals for the Third Circuit "'ha[s] equated good cause with the concept of excusable neglect, which requires a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.'"[38]

> The factors a court should consider in evaluating whether good cause exists are: (1) the reasonableness of the plaintiff's efforts to effect service; (2) prejudice to the defendant because of untimely service; (3) whether the plaintiff has moved for an enlargement of time; and (4)

---

[36] *Rinaldi*, 904 F.3d at 268.

[37] *Id.*

[38] *Mathies v. Silver*, 450 F. App'x 219, 222 (3d Cir. 2011) (quoting *MCI Telecomms. Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086, 1097 (3d Cir. 1995) (ellipsis omitted)).

whether the statute of limitations will bar the plaintiff's claims if the action is dismissed.[39]

After reviewing the relevant factors, the Court concludes that Smith has not shown good cause for his failure to serve Unserved Defendants. As to the first factor, Smith's efforts to effect service have been deficient. The Court mailed waiver of service forms and complaints to Unserved Defendants at the addresses provided by Smith,[40] but it is unclear if those documents were received. Unserved Defendants never executed the waivers of service, entered appearances, or filed any documents in this matter. Once Unserved Defendants failed to return executed waiver of service forms, it became Smith's responsibility to ensure that they were served. Nevertheless, Smith did not follow up on the failed service attempt, nor has he provided the Court with a better address where it may direct service by United States Marshals.

For nearly one year, Smith failed to ensure that Unserved Defendants were served or take any action to effectuate service, even after Martin filed a motion to dismiss. Importantly, Smith has failed to respond to the Court's order directing him to show cause, or attempt to provide a reasonable explanation for his failure to serve Unserved Defendants.

---

[39] *Id.*

[40] *See* Doc. 8.

9

With regard to the second factor, Smith never moved for an extension of time to serve Unserved Defendants. As to the third factor, Unserved Defendants have likely suffered little prejudice due to Smith's failure to timely serve the summons and complaint, as the events that form the basis of Smith's complaint occurred approximately one year ago.[41] Nevertheless, the lapse in time between those events and this date may have resulted in "the inevitable dimming of witnesses' memories"[42] or the routine destruction of important documents related to this case. This, in turn, would hinder Unserved Defendants' ability to defend against the allegations.

Finally, any action against Unserved Defendants is not barred by the statute of limitations, as "[t]he statute of limitations applicable to § 1983 claims in Pennsylvania is two years,"[43] and the events that Smith complain of continued within the past year.[44] In the absence of good cause to excuse Smith's failure to serve Unserved Defendants or, at the very least, a reasonable explanation for that failure, the Court concludes that it is appropriate to dismiss the action against Unserved Defendants.

---

[41] Doc. 1.

[42] *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 80 (3d Cir. 2012).

[43] *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

[44] *See* Doc. 1 at 8-15.

## III. CONCLUSION

For the foregoing reasons, this Court will grant Martin's motion to dismiss based on Smith's failure to exhaust his administrative remedies. The Court will further dismiss Unserved Defendants pursuant to Rule 4(m) and deny Smith's requests for default judgment.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge